

FILED

JUN - 9 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

PATRICE JONES,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No.: 4:10cv75

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

The plaintiff, Patrice Jones, brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits and supplemental security income under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed October 21, 2010. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be AFFIRMED.

## I. PROCEDURAL BACKGROUND

On March 28, 2007, Patrice Jones filed applications for disability insurance benefits and supplemental security income alleging an onset of disability as of April 9, 2004, due to heart disease, back pain, degenerative joint disease, diabetes,

high blood pressure, and depression. R.[1] 16-17, 278, 284, 326, 332. Ms. Jones' applications were denied by the Social Security Administration initially on July 31, 2007, and on reconsideration on February 28, 2008. R. 44-56; 60-64.

Ms. Jones requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration, which was held on February 5, 2009. R. 22-37, 66. Ms. Jones was represented by her attorney, John H. Klein, at the hearing. R. 13, 22-37. Ms. Jones and vocational expert Edith J. Edwards testified at the hearing. R. 25-34, 35-37.

On May 7, 2009, the ALJ issued a decision. R. 10-21. The ALJ found Ms. Jones was not entitled to disability insurance benefits or supplemental security income because she was not under a disability as defined by the Act. R. 21. The ALJ found Ms. Jones capable of performing a limited range of sedentary work and making an adjustment to work that exists in significant numbers in the local and national economies. R. 18-21. On June 24, 2009, Ms. Jones requested review of the ALJ's decision by the Appeals Council of the Office of Hearings and Administration (the "Appeals Council"). R. 8-9. The Appeals Council denied review on April 30, 2010. R. 1-5. This makes the ALJ's decision the "final decision" of the Commissioner subject to

---

[1] "R." refers to the certified administrative record of proceedings relating to this case (ECF No. 8), filed under seal pursuant to Local Civil Rule 7(C)(1).

judicial review here, pursuant to 42 U.S.C. § 405(g). 20 C.F.R. §§ 404.981, 416.1481.

Ms. Jones brought this action seeking judicial review of the decision of the Commissioner denying her claim for disability insurance benefits and supplemental security income. Ms. Jones filed a complaint on June 18, 2010, which the defendant answered on October 20, 2010. ECF Nos. 3, 7. Ms. Jones filed a motion for summary judgment with memorandum in support on November 24, 2010. ECF Nos. 11-12. The defendant filed a motion for summary judgment with memorandum in support on December 21, 2010. ECF Nos. 13-14. Ms. Jones filed a reply to the defendant's motion for summary judgment on January 7, 2011. ECF No. 15. As neither counsel in this case has indicated special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the motion papers and memoranda. See Local Civil Rule 7(J).

## II. FACTUAL BACKGROUND

At the time of the hearing in this matter, Ms. Jones was forty-six years old. See R. 20, 25, 76, 81, 86, 94. Ms. Jones is presently forty-nine years old. See id. Ms. Jones has a tenth-grade education. R. 26. Her past relevant work includes employment as a fast food crew chief, a machine operator, and a laundry presser. R. 20, 35. Each of these occupations is

- 3 -

considered light work.[2]  Id.  According to vocational expert testimony, the first occupation is considered semi-skilled work, and the latter two are considered unskilled work.[3]  R. 35.

On April 4, 2004, Ms. Jones ceased working due to her alleged disability.  R. 13, 26.

## III. STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner held that Ms. Jones was not under a disability within the meaning of the Social Security Act.  Under

---

[2] "Light work" is defined by the regulations as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[3] Under the Social Security Act, all occupations are classified as "unskilled," "semi-skilled," or "skilled" work.  See 20 C.F.R. §§ 404.1568, 416.968.  Unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. §§ 404.1568(a), 416.968(a).  Semi-skilled work requires

> some skills but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary . . . .

20 C.F.R. §§ 404.1568(b), 416.968(b).  Skilled work requires the use of judgment in "dealing with people, facts, or figures or abstract ideas at a high level of complexity."  20 C.F.R. §§ 404.1568(c), 416.968(c).

42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam); Hays v. Sullivan, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter, 993 F.2d at 34 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1453 (citing King v. Califano, 599 F.2d 497, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Ms. Jones is disabled, but whether the Commissioner's finding that Ms. Jones is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

## IV. **THE ALJ'S DECISION**

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the

> inability to do any substantial gainful
> activity by reason of any medically
> determinable physical or mental impairment[4]

---

[4] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

> which can be expected to result in death or
> which has lasted or can be expected to last
> for a continuous period of not less than 12
> months.

20 C.F.R. §§ 404.1505(a), 416.905(a); see also 42 U.S.C.
§ 423(d)(1)(a). To meet this definition, the claimant must have
a severe impairment which makes it impossible to do previous
work or any other substantial gainful activity[5] that exists in
the national economy. 20 C.F.R. §§ 404.1505(a), 416.905(a); see
also 42 U.S.C. § 423(d)(2)(A).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to
ascertain whether the claimant is disabled, which is set forth
at 20 C.F.R. §§ 404.1520 and 416.920. See Hall v. Harris, 658
F.2d 260, 264-65 (4th Cir. 1981). Under this process, the ALJ
must determine in sequence:

(1)  Whether the claimant is engaged in substantial gainful
     activity (i.e., whether the claimant is working). If
     so, the claimant is not disabled and the inquiry is
     halted.

(2)  Whether the claimant has a severe impairment. If not,
     then the claimant is not disabled and the inquiry is
     halted.

---

[5] "Substantial gainful activity" is work that (1) involves
performing significant or productive physical or mental duties,
and (2) is done (or intended) for pay or profit. 20 C.F.R.
§§ 404.1510, 416.910.

(3) Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant is disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[6] and her vocational abilities. If so, the claimant is not disabled.

In this case, the ALJ reached the fifth step of the sequence, at which point he determined that Ms. Jones was not disabled. The ALJ first determined that Ms. Jones had not engaged in substantial gainful activity at any time since January 27, 2007, the effective alleged onset date of disability.[7] R. 16. The ALJ next found in step two that Ms.

---

[6] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[7] Ms. Jones had previously submitted applications for disability insurance benefits and supplemental security income on May 5, 2005, alleging similar impairments and the same disability onset date. These previous claims were adjudicated

- 8 -

Jones had a severe impairment: left knee degenerative joint disease. R. 16-17. At step three, the ALJ found that Ms. Jones did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. R. 18.

## B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Ms. Jones' residual functional capacity ("RFC"), based on the ALJ's evaluation of the evidence, including plaintiff's testimony, the findings of treating and examining physicians, and the state agency's disability determination, rendered by a non-examining physician. R. 18-20. Based on the evidence as a whole, the ALJ determined that Ms. Jones retained the RFC to perform a limited range of sedentary work. R. 18-20. The ALJ found that Ms. Jones had the residual functional capacity to:

> lift and carry 10 pounds occasionally, sit 6 hours, stand and walk 2 hours in an eight-hour day with the opportunity to alternate her position between sitting and standing more often than at normal breaks and lunch. The claimant retains the capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[8] involving

---

and denied following an administrative hearing by an ALJ decision dated January 26, 2007. Accordingly, in the absence of a showing of good cause to reopen the prior claims and set aside the previous decision, the ALJ decision on her current claims considered only the unadjudicated period beginning January 27, 2007. R. 13.

[8] "Sedentary work" is defined by the regulations as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined

> simple low stress repetitive tasks not
> involving any climbing, any pushing and
> pulling with her lower extremities due to her
> left knee problem, and no more than occasional
> bending and stooping.

R. 18.

In reaching a conclusion about Ms. Jones' RFC, the ALJ considered Ms. Jones' testimony and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms <u>are not credible to the extent they are inconsistent with the above residual functional capacity assessment</u>." R. 19 (emphasis in original).

Pursuant to Social Security Ruling 96-6p, the ALJ considered the state agency findings of fact about the nature and severity of Ms. Jones' impairment, conducted by medical consultants who were also experts in Social Security disability programs, as the medical opinions of non-examining medical sources. R. 19-20.

In its Residual Physical Functional Capacity Assessment, completed initially by one medical consultant on July 25, 2007, and affirmed on review by another medical consultant on February

---

as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

28, 2008, the DDS found Ms. Jones capable of sitting, standing, or walking about six hours out of an eight-hour workday, and capable of lifting or carrying up to twenty pounds occasionally or ten pounds frequently. R. 280, 328. The DDS found additional limitations on Ms. Jones' ability to perform work in which she would be required to climb ramps or stairs, balance, stoop, kneel, crouch, or crawl more than occasionally; the DDS also found that Ms. Jones was incapable of performing any work that might require her to climb ladders, ropes or scaffolds at any time. R. 281, 329. The initial reviewer found Ms. Jones to be limited in her ability to reach overhead, but the second reviewer found no manipulative limitations whatsoever. Id. The DDS found that Ms. Jones should further avoid concentrated exposure to certain environmental conditions, including extreme cold or heat, wetness, humidity, or vibration. R. 282, 330. The DDS found no other physical limitations on Ms. Jones' ability to work. R. 281-82, 329-30.

The ALJ found the DDS findings of fact consistent with the overall objective evidence of record at the time when each report was prepared, but based on the submission of more recent evidence documenting deterioration in her activity level, the ALJ afforded only "moderate" weight to the state agency determination with respect to Ms. Jones' physical impairments,

finding that this additional evidence "justifies a more restrictive residual functional capacity." R. 19-20.

Based on this state agency determination and the other evidence of record, the ALJ concluded that Ms. Jones retained the RFC to perform a limited range of sedentary work. R. 18-20.

## C. Past Relevant Work

The ALJ found in step four that Ms. Jones was not capable of performing the functional demands of any past relevant work, as it involved light exertion which exceeded the limited range of sedentary work Ms. Jones was now capable of performing. R. 20.

## D. Adjustment to Other Work

It is the claimant who bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512, 416.912; Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience. Hunter, 993 F.2d at 35; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Ms. Jones was a "younger individual age 18-44" at the alleged disability onset date, but later changed to a "younger individual age 45-49," with a limited education and the ability to communicate in English. R. 20. The ALJ noted that transferability of job skills was not at issue pursuant to the table rules set forth in the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2. Id. According to the testimony given by a vocational expert, a significant number of jobs exist in the local and national economies for an individual of Ms. Jones' age, education, work experience, and RFC as determined by the ALJ. R. 20-21, 35-37. These jobs include order clerk (525 positions locally, 106,000 nationally) and hand packer (500 locally, 100,000 nationally). R. 21, 35-36. Having found a significant number of jobs to which the claimant is capable of making a successful adjustment, the ALJ concluded that Ms. Jones was therefore not disabled. R. 20-21.

## V. ISSUES CONSIDERED ON APPEAL

Ms. Jones challenges that the ALJ's decision on the following grounds: (1) the ALJ failed to properly consider and weigh the opinion of Karen Bagley, a Family Nurse Practitioner ("FNP") and Ms. Jones' primary care provider at the Peninsula Health Center; (2) the ALJ failed to find Ms. Jones' back pain to be a severe impairment and failed to consider it in determining her RFC; and (3) the ALJ's determination that Ms.

Jones retained the RFC to perform a limited range of sedentary work was not supported by substantial evidence.

## VI. ANALYSIS

### A. Opinions of Treating Family Nurse Practitioner

The plaintiff claims that the ALJ erred by failing to properly evaluate and assign appropriate weight to the opinion of Karen Bagley, FNP. Pl.'s Mem. in Supp. 8, ECF No. 12. Ms. Jones contends that proper consideration of Ms. Bagley's opinion would have established an additional medically determinable impairment, chronic right elbow pain, and that this additional impairment prevented Ms. Jones from performing even a limited range of sedentary work. See id. at 8-9.

### 1. Documentation of Chronic Right Elbow Pain

Ms. Jones first presented to Ms. Bagley as a new patient on August 9, 2006, complaining of right elbow pain, left knee pain, and low back pain. R. 245. Ms. Jones reported having been diagnosed with bursitis in her right elbow in an August 2, 2006 visit to an unidentified hospital emergency room.[9]  Id.  Ms. Bagley diagnosed Ms. Jones with "chronic pain," advised her that the Peninsula Health Center was unable to perform pain management, particularly involving prescription narcotics, and

---

[9] The record does not contain any documentation related to the August 2, 2006 emergency room visit.

referred her to the orthopedic clinic at the Medical College of Virginia for evaluation and treatment. Id.

On September 27, 2006, Ms. Jones presented to Ms. Bagley with complaints of kidney pain and fatigue due to her medications. R. 248. In her treatment notes, Ms. Bagley observed that Ms. Jones's pain management referral to the Medical College of Virginia was still pending while she awaited a financial eligibility determination. Id.

On October 16, 2006, Ms. Bagley again diagnosed Ms. Jones with "elbow pain." R. 250. Ms. Bagley also completed the first of two medical reports in support of Ms. Jones' application for General Relief, Medicaid and Temporary Assistance for Needy Families. R. 274. In this medical report, Ms. Bagley identified three diagnosed medical conditions that affected Ms. Jones' ability to function: (1) type 2 diabetes mellitus; (2) right elbow pain; and (3) low back pain. Id. Ms. Bagley gave her prognosis that Ms. Jones' condition was expected to improve. Id. Finally, Ms. Bagley opined that Ms. Jones was "unable to do any work that requires her right arm" as a result of elbow pain, that her incapacity had continued for at least thirty days after the alleged onset date of August 9, 2006, and that her incapacity was expected to continue for an "unknown" duration because it "need[ed] further evaluation." Id. Ms. Bagley also

noted that Ms. Jones had been referred to the orthopedic clinic at the Medical College of Virginia. Id.

On November 15, 2006, Ms. Bagley again diagnosed Ms. Jones with "chronic back pain / elbow pain," prescribing Darvocet for pain relief and taking x-rays of Ms. Jones' spine. R. 252. The x-rays were reviewed that same day by radiologist Leo P. O'Connell, M.D., who concluded that Ms. Jones had a "[n]ormal [lumbosacral] spine" with no abnormalities. R. 273. Other than prescribing pain killers, no further evaluation or treatment was ordered with respect to Ms. Jones' elbow pain.

On March 1, 2007, Ms. Jones presented to the emergency room at Riverside Regional Medical Center after falling down a flight of stairs. R. 210. With respect to her right arm, the admitting nurse noted that Ms. Jones had "[n]o complaint of pain . . . [n]o numbness/tingling . . . [f]ull range of motion." R. 213. The ER physician, Dr. Shahbaz Kahn, noted the results of his physical examination of Ms. Jones's arms: "Inspection normal, [n]o cyanosis, [n]o clubbing, [n]o edema, [n]ormal range of motion." R. 211.

On May 4, 2007, Ms. Bagley completed the second of two medical reports in support of Ms. Jones' application for General Relief, Medicaid and Temporary Assistance for Needy Families. R. 275. In this medical report, Ms. Bagley identified three diagnosed medical conditions that affected Ms. Jones' ability to

- 16 -

function: (1) type 2 diabetes mellitus; (2) chronic right elbow and back pain; and (3) acute coronary syndrome. Id. Ms. Bagley gave her prognosis that Ms. Jones' condition was expected to remain unchanged. Id. Finally, Ms. Bagley opined that "work requiring upper limb motion is restricted due to pain," that this limitation on Ms. Jones' capacity for self-support had continued for at least thirty days after the alleged onset date of October 2006, and that the limitation was expected to continue for a period of twelve months from the alleged onset date. Id. Ms. Bagley also noted that Ms. Jones needed further orthopedic evaluation and probably physical therapy, but she reportedly lacked the funds to proceed. Id.

On July 13, 2007, Ms. Jones presented to the emergency room at Riverside Regional Medical Center, complaining of knee pain, tooth pain, dizziness, and tachycardia. R. 290-91, 293. The ER physician, Dr. Ronald Lebman, noted the results of his physical examination of Ms. Jones' arms: "Inspection normal, [n]o cyanosis, [n]o clubbing, [n]o edema, [n]ormal range of motion." R. 291.

On July 25, 2007, DDS medical consultant William Martin Jr., M.D., completed his evaluation of Ms. Jones' RFC. R. 279-84. Based upon a review of Ms. Jones' medical records, including Ms. Bagley's treatment notes, Dr. Martin noted a history of "[m]ild [degenerative joint disease] in knees and

elbow," but ultimately concluded that "[t]he medical evidence establishes medically determinable impairments of Back And Knee Pain, Heart Disease and Diabetes." R. 284. Dr. Martin did not find a medically determinable impairment with respect to Ms. Jones' historical complaints of right elbow pain. See id. He did, however, find that Ms. Jones was "limited in reaching overhead." R. 281.

On November 5, 2007, Ms. Jones presented to her treating physician, Dr. Robert Lowe, with complaints of flulike symptoms and low back pain. R. 323. In his treatment notes, Dr. Lowe noted that Ms. Jones had a history of diabetes, chronic right elbow and back pain, and acute coronary syndrome. Id. Dr. Lowe ultimately diagnosed Ms. Jones with low back spasms, diabetes, hypertension, and bronchitis. R. 324. Dr. Lowe did not render a finding or state an opinion with respect to Ms. Jones' elbow. See R. 323-24.

On December 3, 2007, Ms. Jones presented to the emergency room at Riverside Regional Medical Center, complaining of chest pain. R. 309. In providing her medical history, Ms. Jones reported "joint swelling," "joint stiffness," and "right shoulder bursitis," and "chronic back/hip pain," but made no mention of chronic elbow pain. Id. The ER physician, Dr. Jeff Dickson, noted the results of his physical examination of Ms.

Jones' arms, finding mild tenderness to palpation in her right shoulder and deltoid, but "[otherwise] normal." R. 310.

On February 28, 2008, DDS medical consultant Catherine Howard, M.D., completed her evaluation of Ms. Jones' RFC. R. 327-32. On reconsideration of Dr. Martin's RFC assessment, Dr. Howard found that "[t]he medical evidence establishes medically determinable impairments of Degenerative Joint Disease, Diabetes and High Blood Pressure." R. 332. Dr. Howard discussed the degeneration and treatment of Ms. Jones' knee, but made no mention of any impairment to Ms. Jones' right elbow. See id. In determining Ms. Jones' RFC, Dr. Howard expressly found no limitations to Ms. Jones' ability to reach overhead. R. 329.

Ms. Bagley continued to treat Ms. Jones on a regular basis through the date of her administrative hearing in February 2009 (R. 27, 358), but none of Ms. Bagley's treatment notes makes any mention of elbow pain after the May 2007 medical report. Neither do any of the medical records documenting examination by other medical sources, other than the two oblique references by Dr. Martin and Dr. Lowe described above. Indeed, in multiple visits to the emergency room, Ms. Jones never complained about right elbow pain, and ER physicians found no abnormalities with respect to her elbow upon physical examination.

## 2. **Ms. Bagley's Findings and Opinions**

Based on Ms. Bagley's treatment notes and her October 2006 and May 2007 medical reports, the plaintiff argues that Ms. Jones had an additional medically determinable impairment, chronic right elbow pain, and based on the two medical reports, she argues that this additional impairment so severely restricted the use of her right arm that it prevented Ms. Jones from performing even a limited range of sedentary work. The plaintiff argues that the ALJ erred in failing to consider Ms. Bagley's findings and opinions, and in failing to explain the proper weight assigned to Ms. Bagley's opinions. But the plaintiff's arguments are not well-taken.

First, the Court notes that Ms. Bagley is a nurse practitioner, which is not an "acceptable medical source" under Social Security regulations, and therefore Ms. Bagley's findings and opinions cannot form the basis for establishing the existence of a medically determinable impairment. Under Social Security regulations, a medically determinable impairment can be established only by evidence from acceptable medical sources. See 20 C.F.R. §§ 404.1513(a), 416.913(a). "Acceptable medical sources," in turn, are defined as licensed physicians (M.D. or D.O.), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. Id. Meanwhile, nurse practitioners are

defined as "other sources," whose findings and observations may be used only as evidence of the severity of an otherwise established medically determinable impairment and how it affects the claimant's ability to work. See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

> Information from "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2. Other than the findings and opinions of Ms. Bagley, there is simply no objective evidence of a medically determinable impairment to Ms. Jones' right elbow.

Because findings and opinions of a nurse practitioner cannot form the basis for establishing a medically determinable impairment, the ALJ did not err by omitting any finding that Ms. Jones suffered from a medically determinable impairment of chronic right elbow pain. Moreover, the ALJ did not err in omitting an explanation of the weight given to Ms. Bagley's opinion that chronic right elbow pain prevented or limited Ms. Jones' performance of work that required the use of her right arm or in failing to consider complaints of chronic right elbow pain in determining Ms. Jones' RFC, as neither was relevant in

the absence of a medically determinable impairment. See Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6 (an ALJ is only required to consider "other source" evidence or explain the weight given to "other source" opinions when relevant to the outcome of the claimant's disability claim).

Second, the Court finds that, contrary to the plaintiff's characterization, the ALJ did in fact consider Ms. Bagley's treatment notes in considering Ms. Jones' disability claims. See R. 19 (referencing "regular treatment for primary care," provided by Ms. Bagley); see also R. 16 (discussing Ms. Jones' diagnosis of depression and prescription for Zoloft); R. 257, 363, 361 (diagnoses by Ms. Bagley of depression and treatment with prescription of Zoloft and, later, Lexapro); R. 244, 384 (patient drug profiles identifying Ms. Bagley as prescriber of Zoloft and Lexapro). Moreover, the ALJ appears to have considered any limitations to Ms. Jones' use of her upper extremities in finding that she was limited to performing work that would require her to lift or carry no more than ten pounds, and only occasionally, and that she was restricted from performing work that would require any climbing. See R. 18.

Third, having reviewed the entire administrative record, the Court finds substantial evidence to support the ALJ's implicit determination that Ms. Jones does not suffer any notable impairment with respect to her right elbow. In

particular, the Court notes the absence of any abnormal findings in multiple physical examinations of her arms performed by emergency room physicians, the absence of any complaints or diagnosis of right elbow pain, acute or chronic, in any of Ms. Jones' medical records after Ms. Bagley's May 2007 medical report, and the omission of any mention of right elbow pain as a basis for disability in Ms. Jones' application for benefits.

Accordingly, the Court FINDS that there is substantial evidence in the administrative record to support the ALJ's implicit finding that Ms. Jones does not suffer from a medically determinable impairment of chronic right elbow pain, and that the ALJ's decision in this respect was reached based upon a correct application of the relevant law. The Court FINDS no error by the ALJ with respect to consideration and evaluation of Ms. Bagley's findings or opinions.

## B. Back Pain as a Severe Impairment

The plaintiff claims that the ALJ erred in failing to find that Ms. Jones' chronic back pain constituted a severe impairment, or, in the alternative, in failing to consider her "non-severe" impairment due to back pain in determining Ms. Jones' RFC. Pl.'s Mem. in Supp. 13, ECF No. 12; Pl.'s Reply Br. 5, ECF No. 15. Ms. Jones contends that evidence in the record demonstrates a severe impairment due to chronic back pain, which in turn significantly limits her ability to perform basic work

functions. Pl.'s Mem. in Supp. 13-15, ECF No. 12. In the alternative, Ms. Jones contends that, even if her back pain does not constitute a severe impairment, the ALJ failed to consider limitations imposed by her "non-severe" back impairment in determining her RFC. Pl.'s Reply Br. 5, ECF No. 15.

## 1. Documentation of Chronic Low Back Pain

As noted above, Ms. Jones first presented to Karen Bagley, FNP, as a new patient on August 9, 2006, complaining of right elbow pain, left knee pain, and low back pain. R. 245. Ms. Bagley diagnosed Ms. Jones with "chronic pain," advised her that the Peninsula Health Center was unable to perform pain management, particularly involving prescription narcotics, and referred her to the orthopedic clinic at the Medical College of Virginia for evaluation and treatment. Id.

In her treatment notes for a September 27, 2006 visit, Ms. Bagley observed that Ms. Jones's pain management referral to the Medical College of Virginia was still pending while she awaited a financial eligibility determination. R. 248.

In her October 16, 2006 medical report in support of Ms. Jones' application for General Relief, Ms. Bagley identified three diagnosed medical conditions that affected Ms. Jones' ability to function: (1) type 2 diabetes mellitus; (2) right elbow pain; and (3) low back pain. R. 274. Ms. Bagley gave her prognosis that Ms. Jones' condition was expected to improve, and

noted that she had been referred to the orthopedic clinic at the Medical College of Virginia. Id.

On November 15, 2006, Ms. Bagley again diagnosed Ms. Jones with "chronic back pain / elbow pain," prescribing Darvocet for pain relief and taking x-rays of Ms. Jones' spine. R. 252. The x-rays were reviewed that same day by radiologist Leo P. O'Connell, M.D., who observed: "No evidence of fracture or bone destruction noted. No subluxations are seen. No evidence of spondylolysis. Intervertebral disc spaces are normal." R. 273. Based upon his review of the x-ray film, Dr. O'Connell concluded that Ms. Jones had a "[n]ormal [lumbosacral] spine." Id. The x-rays were faxed to the orthopedic clinic at the Medical College of Virginia on November 20, 2006. R. 255.

On November 29, 2006, Ms. Bagley spoke with Ms. Jones by telephone, and noted in Ms. Jones' record that the Medical College of Virginia had recommended physical therapy. R. 255.

On December 7, 2006, Ms. Jones presented to the emergency room at Riverside Regional Medical Center complaining of pain from her lower back down to her knee. R. 240. The ER physician, Dr. Lalani McCann, diagnosed Ms. Jones as suffering from low back pain with left side sciatica. Id. She prescribed Percocet and valium and discharged Ms Jones, noting that she was ambulatory. Id.

On December 12, 2006, Ms. Jones called Ms. Bagley's office, complaining that the Motrin prescribed by the orthopedic clinic at the Medical College of Virginia wasn't helping with the pain, and requesting a prescription for Darvocet. R. 255. On December 15, 2006, Ms. Bagley called Ms. Jones back to advise her that Darvocet is a controlled drug with no anti-inflammatory effect and to direct her to continue taking Motrin as advised by the orthopedic specialist. Id.

On December 27, 2006, Ms. Jones called the Orthopedic Specialty Clinic at the Medical College of Virginia, complaining that the Voltaren and ibuprofen prescribed to her was not helping her back pain, and requesting "something stronger." R. 199.

On February 19, 2007, Ms. Jones presented at the Orthopedic Specialty Clinic at the Medical College of Virginia for a follow-up appointment with respect to her knee and back pain. R. 198. Ms. Jones complained that the Voltaren and ibuprofen she had been prescribed was not helping with her pain. Id. On physical examination, the treating Physician's Assistant observed no tenderness in Ms. Jones' lower back and sacroiliac joints. Id. The PA diagnosed Ms. Jones with degenerative joint disease of the left knee and low back pain, administered an injection to her left knee, and instructed her to continue

physical therapy exercises, to continue to take Voltaren, and to schedule a follow-up appointment if and when necessary. Id.

On March 1, 2007, Ms. Jones presented to the emergency room at Riverside Regional Medical Center after falling down a flight of stairs, complaining of severe paraspinal pain. R. 210. Ms. Jones complained to the admitting nurse of generalized pain and stiffness on her right side, but denied back pain or tenderness of her costovertebral angle. R. 212. The ER physician, Dr. Shahbaz Kahn, noted the results of his physical examination of Ms. Jones' back: "Normal inspection, [t]here is paraspinal tenderness, [t]here is paraspinal tenderness in the right mid-back area, +ve tenderness in [right] middle back, no bruising or swelling." R. 211. Dr. Kahn administered Percocet and discharged Ms. Jones, who reported feeling better with the pain medication. Id.

On April 4, 2007, Ms. Jones presented to Ms. Bagley complaining of "orthopedic problems / pain." R. 257. Ms. Jones advised that she had received a steroid injection from the orthopedic clinic at the Medical College of Virginia, but it provided no relief from pain. Id. Ms. Bagley diagnosed Ms. Jones with depression and prescribed Zoloft. Id.

In her May 4, 2007 medical report in support of Ms. Jones' application for General Relief, Ms. Bagley identified three diagnosed medical conditions that affected Ms. Jones' ability to

function: (1) type 2 diabetes mellitus; (2) chronic right elbow and back pain; and (3) acute coronary syndrome. R. 275. Ms. Bagley gave her prognosis that Ms. Jones' condition was expected to remain unchanged. Id. Ms. Bagley also noted that Ms. Jones needed further orthopedic evaluation and probably physical therapy, but she reportedly lacked the funds to proceed. Id.

On June 13, 2007, Ms. Jones presented to Ms. Bagley for a gynecological exam, but also complained that she continued to have problems with pain, and that neither the orthopedic clinic at the Medical College of Virginia nor the free clinics had provided any help with her complaints of pain. R. 259. Ms. Jones advised that she planned to go to the emergency room for a "shot" to help with the pain, and Ms. Bagley noted that Ms. Jones was crying as she provided her with this information. Id.

On July 13, 2007, Ms. Jones presented to the emergency room at Riverside Regional Medical Center, complaining of knee pain, tooth pain, dizziness, and tachycardia. R. 290-91, 293. The ER physician, Dr. Ronald Lebman, noted the results of his physical examination of Ms. Jones' back: "There is no [costovertebral angle] tenderness, [t]here is no tenderness to palpation, [n]ormal inspection." R. 291.

On July 25, 2007, DDS medical consultant William Martin Jr., M.D., completed his evaluation of Ms. Jones' RFC. R. 279-84. Based upon a review of Ms. Jones' medical records, Dr.

- 28 -

Martin noted that an x-ray of Ms. Jones' back was normal and that her treatment for back pain "has been essentially routine and conservative in nature," but he ultimately concluded that "[t]he medical evidence establishes medically determinable impairments of Back And Knee Pain, Heart Disease and Diabetes." R. 284.

On September 17, 2007, following a fall, Ms. Jones presented to family physician Dr. Dwight C. Herbert with complaints of left leg pain, intermittent lower back pain, and insomnia. R. 301. On physical examination, Dr. Herbert observed that Ms. Jones' "[g]ait and station [were] normal," with no specific observations regarding her back. Id. Dr. Herbert diagnosed Ms. Jones with left knee instability, chronic left knee pain, and insomnia, and he referred Ms. Jones for an orthopedic consultation. Id.

Pursuant to Dr. Herbert's referral, on September 27, 2007, Ms. Jones presented to Dr. Adrian T. Baddar of Hampton Roads Orthopedics & Sports Medicine. R. 303. Dr. Baddar referred Ms. Jones for an MRI of her knee, which was taken on October 5, 2007. R. 304. On October 16, 2007, Ms. Jones presented to Dr. Baddar's colleague, Dr. John Aldridge, for a follow-up appointment with respect to the MRI. Id. Dr. Aldridge's evaluation and treatment was limited to Ms. Jones' knee condition, and he advised Ms. Jones that she should go to the

Lackey Free Clinic if she was interested in pursuing further evaluation of her low back pain. See id. There is no evidence in the record that she did so.

On November 5, 2007, Ms. Jones presented to her treating physician, Dr. Robert Lowe, with complaints of flulike symptoms and low back pain. R. 323. Dr. Lowe diagnosed Ms. Jones with low back spasms and prescribed muscle relaxants. R. 324.

On December 3, 2007, Ms. Jones presented to the emergency room at Riverside Regional Medical Center, complaining of chest pain. R. 309. In providing her medical history, Ms. Jones reported "chronic back/hip pain." Id. The ER physician, Dr. Jeff Dickson, noted the results of his physical examination of Ms. Jones' back: "There is no [costovertebral angle] tenderness, [t]here is no tenderness to palpation, [n]ormal inspection." R. 310.

On December 17, 2007, Ms. Jones presented to Dr. Lowe for prescription medication refills and complaining of a "burning sensation [on the] bottom of [her] feet." R. 321. Among other conditions, Dr. Lowe diagnosed Ms. Jones with "back pain." R. 322.

On January 23, 2008, Ms. Jones presented to Dr. Lowe with complaints of knee pain, back pain, degenerative joint disease, insomnia, and diabetes. R. 319. Dr. Lowe diagnosed Ms. Jones

with knee pain caused by degenerative joint disease, insomnia, and chronic back pain. R. 320.

On February 4, 2008, Ms. Jones presented to Dr. Lowe with complaints of a urinary tract infection and back pain of "strong" but "small frequency." R. 318. Following a physical examination, Dr. Lowe diagnosed and treated Ms. Jones for kidney stones and a urinary tract infection. Id.

On February 28, 2008, DDS medical consultant Catherine Howard, M.D., completed her evaluation of Ms. Jones' RFC. R. 327-32. On reconsideration of Dr. Martin's RFC assessment, Dr. Howard found that "[t]he medical evidence establishes medically determinable impairments of Degenerative Joint Disease, Diabetes and High Blood Pressure." R. 332. Dr. Howard discussed the treatment of Ms. Jones' back pain, but she did not find a medically determinable impairment due to Ms. Jones' historical complaints of low back pain. See id. In determining Ms. Jones' RFC, Dr. Howard expressly found no limitations to Ms. Jones' ability to reach overhead. R. 329.

On March 4, 2008, Ms. Jones presented to Dr. Lowe with complaints of chronic low back pain, left leg pain, and that her leg "goes out and swells up." R. 343. Dr. Lowe diagnosed Ms. Jones with chronic degenerative joint disease. Id. He did not address Ms. Jones back pains.

On March 12 2008, Ms. Jones presented to Ms. Bagley for a routine follow-up visit. R. 366. Ms. Bagley noted that Ms. Jones was "being followed by [an] internal medicine MD for pain management," and that she continued to complain of pain. Id.

On March 31, 2008, Ms. Jones presented to Dr. Lowe, complaining of chronic back pain, chronic degenerative joint disease, and left shoulder discomfort. R. 345. Dr. Lowe diagnosed Ms. Jones with a post-cervical sprain, chronic back pain, severe degenerative joint disease, insomnia, and a rash. Id.

On April 29, 2008, Ms. Jones presented to Dr. Lowe, complaining of left side flank pain, chronic back pain, and insomnia. R. 347. Dr. Lowe diagnosed Ms. Jones with a kidney infection, chronic back pain, and degenerative joint disease. R. 346.

On May 27, 2008, Ms. Jones presented to Dr. Lowe, following a tooth extraction and complaining of low back pain. R. 349. Dr. Lowe diagnosed Ms. Jones with back pain and right facial swelling, prescribing antibiotics and recommending use of a TENS unit to alleviate her back pain. R. 348.

On December 22, 2008, Ms. Jones presented to Dr. Lowe, complaining of left facial swelling. R. 353. Following a physical exam, Dr. Lowe diagnosed Ms. Jones with a facial abscess and chronic back pain. R. 354.

## 2. **ALJ Consideration of Complaints of Low Back Pain**

Based on the above medical records, the plaintiff argues that the ALJ erred in failing to find that Ms. Jones' chronic back pain constituted a severe impairment at step two of the five-step sequential analysis. But, as noted above, the ALJ did find that Ms. Jones had a severe impairment: left knee degenerative joint disease. R. 16-17. This Court has recently considered this issue and held that "it is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps." Clark v. Comm'r, No. 2:09cv417, 2010 WL 2730622, at *11 (E.D. Va. June 3, 2010) (Stillman, J.), report and recommendation adopted by 2010 WL 2731380 (E.D. Va. July 9, 2010); see also Maziarz v. Sec'y, 837 F.2d 240, 244 (6th Cir. 1987).

Therefore, provided the ALJ here considered Ms. Jones' low back pain in subsequent steps of the five-step evaluation process, there is no reversible error. Even a cursory review of the ALJ's decision reveals that the ALJ did just that. In determining Ms. Jones' RFC, a prerequisite to steps four and five of the five-step sequential analysis, the ALJ clearly considered Ms. Jones' alleged back impairment. See R. 19.

Moreover, having reviewed the entire administrative record, the Court finds substantial evidence to support the ALJ's

determination that Ms. Jones does not suffer from a medically determinable impairment with respect to her low back pain. To establish an impairment, a claimant must demonstrate that the alleged impairment results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908. "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." Soc. Sec. Ruling 96-4p, 1996 WL 3741487, at *1 (July 2, 1996); see also Craig, 76 F.3d at 594 (holding that a claimant must prove the existence of a medically determinable impairment that could reasonably cause the alleged pain suffered by the claimant before the ALJ is obligated to weigh subjective evaluations of the severity of the pain). Ms. Jones' points to the numerous complaints of low back pain that she made over the course of years, but nothing more than her own expression of symptoms of low back pain. See Pl.'s Mem. in Supp. 14-15, ECF No. 12. This stands in contrast to the results of Ms. Jones' November 15, 2006 x-ray, which revealed a "[n]ormal [lumbosacral] spine," R. 273, and the series of emergency room visits in which Ms. Jones' back was found upon physical examination to have no abnormalities, see R. 210-11, 291, 309.

Accordingly, the Court FINDS that there is substantial evidence in the administrative record to support the ALJ's

finding that Ms. Jones does not suffer from a severe impairment with respect to her back, and that the ALJ's decision in this respect was reached based upon a correct application of the relevant law.  The Court further FINDS that the ALJ properly considered any "non-severe" impairment due to low back pain in connection with steps four and five of the five-step sequential analysis.

## C. **The ALJ's Residual Functional Capacity Determination**

The plaintiff claims that the ALJ's determination of Ms. Jones' residual functional capacity was not based on substantial evidence.  Pl.'s Mem. in Supp. 9, ECF No. 12.  In essence, the plaintiff simply reiterates certain medical evidence in the administrative record and asks this Court to re-weigh it and reverse the ALJ's decision.  See id. at 9-13.

But, as noted above, the scope of judicial review of the ALJ's determination is specific and narrow.  See Schweiker, 795 F.2d at 345.  This Court's review is limited to determining whether there is substantial evidence in the administrative record to support the ALJ's decision.  See 42 U.S.C. § 405(g); Hunter, 993 F.2d at 34.  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."  Hays, 907 F.2d at 1456.

The ALJ determined that Ms. Jones retained the RFC to perform a restricted range of sedentary work, limited to work in which she might be required to lift and carry up to ten pounds occasionally, where she could sit six hours and stand or walk two hours out of an eight-hour workday with the opportunity to alternate between sitting and standing positions at will, and involving simple, low-stress repetitive tasks that involve no climbing, no pushing or pulling leg controls, and no more than occasional bending or stooping. R. 18. Based on this RFC determination and the testimony of a vocational expert, the ALJ found that Ms. Jones was capable of performing work that existed in significant numbers in the local and national economy, and therefore she was not disabled. R. 20-21.

Having reviewed the entire administrative record, the Court finds substantial evidence to support the ALJ's RFC determination. In particular, the Court notes that the only medical opinion evidence of record were the two opinions rendered by the state agency medical consultants, Dr. Martin and Dr. Howard. Based on his review of Ms. Jones' medical records, Dr. Martin opined that Ms. Jones was capable of performing light work, lifting up to twenty pounds occasionally and up to ten pounds frequently, provided the work did not require Ms. Jones to climb ladders, ropes or scaffolds, or to reach overhead on anything more than a limited basis. R. 280-81. On

reconsideration, Dr. Howard opined likewise, only modifying her RFC opinion to eliminate the limitation on overhead reaching. R. 328-29. Notably, there are no acceptable medical source opinions in the record to the contrary.

In considering the state agency opinions, the ALJ only gave them "moderate" weight, noting that subsequent evidence suggested deterioration in Ms. Jones' RFC. R. 19-20. As a result, based on subsequent medical evidence and the plaintiff's own testimony at hearing, the ALJ adjusted the RFC in her favor, finding her capable of performing only a restricted range of sedentary work. See R. 18-20. Nevertheless, vocational expert testimony at hearing established that a significant number of jobs to which the plaintiff is capable of making a successful adjustment exist in the local and national economy.

Accordingly, the Court FINDS that there is substantial evidence in the administrative record to support the ALJ's RFC determination, and that the ALJ's decision in this respect was reached based upon a correct application of the relevant law.

## VII. RECOMMENDATION

For the foregoing reasons, the Court recommends that the defendant's motion for summary judgment (ECF No. 13) be GRANTED, the plaintiff's motion for summary judgment (ECF No. 11) be DENIED, and the Commissioner's decision be AFFIRMED.

## VIII. **REVIEW PROCEDURE**

By copy of this Report, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure:

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this Report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(d) of said rules. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this Report or specified findings or recommendations to which objection is made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

June 9 , 2011

## Clerk's Mailing Certificate

A copy of the foregoing Report was mailed this date to the following:

    John H. Klein, Esq.
    Montagna Klein Camden LLP
    425 Monticello Avenue
    Norfolk, VA  23510
        *Counsel for plaintiff Patrice*
        *Jones*

    Joel E. Wilson, Esq.
    Assistant United States Attorney
    United States Attorney's Office
    101 West Main Street, Suite 8000
    Norfolk, VA  23510
        *Counsel for defendant Michael*
        *Astrue, Commissioner of Social*
        *Security*

                                    Fernando Galindo,
                                    Clerk of Court

                        By:  _____
                             Deputy Clerk

                             June  10  , 2011